**STARKEY LABORATORIES, INC., Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Slip Op. 00–69.**
**Court No. 91–02–00132.**

United States Court of International Trade.

June 19, 2000.

Curtin & Steingart, P.A. (Ronald J. Rasley) for plaintiff.

David W. Ogden, Acting Assistant Attorney General; Joseph I. Liebman, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Barbara S. Williams); and Office of Assistant Chief Counsel, U.S. Customs Service (Chi S. Choy), of counsel, Washington, DC, for defendant.

*Opinion & Order*

AQUILINO, Judge.

The defendant has interposed a Motion for Rehearing, Modification, and/or Reconsideration of this court's opinion and judgment herein, reported at 22 CIT ——, 6 F.Supp.2d 910 (1998), familiarity with which is presumed, and which will be referred to hereinafter as slip op. 98–44. That opinion concluded that various hearing-aid elements were properly classifiable under item 870.67 of the Tariff Schedules of the United States ("TSUS") or subheading 9817.00.9600 of the Harmonized Tariff Schedule of the United States ("HTSUS"), depending upon their times of entry, and were therefore free of duty as "articles specially designed or adapted for the use or benefit of the handicapped".

I

A fact stipulated by the parties was that the "articles in the protested entries are parts of hearing aids." 22 CIT at —— and 6 F.Supp.2d at 911, para. 11. The crux of defendant's instant motion is stated to be that, after submission of the papers in support of the parties' cross-motions for summary judgment, which slip op. 98–44 then addressed,

> Presidential Proclamation 6821 ... issued which expressly amended the language of subheading 9817.00.96 to include "parts and accessories (except parts and accessories of braces and artificial limb prosthetics) that are specially designed or adapted for use in the foregoing articles." ...
>
> This explicit addition to ... 9817.00.96, HTSUS, to state that the provision now includes parts establishes that the provision did not originally cover parts of articles for the handicapped, because if the provision previously included parts, there would have been no need for the amendment.

Defendant's Memorandum, p. 4 (citation omitted). In making this motion, counsel do note for the record that they

> had a continuing obligation to keep the Court informed of material developments that might assist the Court in reaching the correct result. Customs apparently did not connect the importance of the statutory change discussed in this motion to the pending litigation until the Court issued its opinion; we regret this lapse in focus. We do not know why Starkey also did not advise the Court of this development.

*Id.* at 3, n. 1.

A

■ The grant of a motion for rehearing made pursuant to CIT Rule 59, which provides, *inter alia*, for the opening of judgments and amending of conclusions of law in cases such as this, lies

> within the sound discretion of the court. *Kerr–McGee Chem. Corp. v. United States,* 14 CIT 582, 583 (1990); *Union Camp Corp. v. United States,* 21 CIT

371, 372, 963 F.Supp. 1212, 1213 (1997). The purpose of a rehearing is not to relitigate a case. *See BMT Commodity Corp. v. United States*, 11 CIT 854, 855, 674 F.Supp. 868, 869 (1987). Rather, a rehearing only serves to rectify "a significant flaw in the conduct of the original proceeding." *W.J. Byrnes & Co. v. United States*, 68 Cust.Ct. 358, 358 (1972) (footnote omitted). Importantly, the court will not disturb its prior decision unless it is "manifestly erroneous." *United States v. Gold Mountain Coffee, Ltd.*, 8 CIT 336, 337, 601 F.Supp. 212, 214 (quoting *Quigley & Manard, Inc. v. United States*, 61 C.C.P.A. 65, 496 F.2d 1214 (1974)) . . . .

*Volkswagen of America, Inc. v. United States*, 22 CIT ——, ——, 4 F.Supp.2d 1259, 1261 (1998). *See also NEC Corp. v. Dep't of Commerce*, 24 CIT ——, ——, 86 F.Supp.2d 1281, 1282 (2000); *Union Camp Corp. v. United States*, 21 CIT 371, 372, 963 F.Supp. 1212, 1213 (1997); *Intercargo Ins. Co. v. United States*, 20 CIT 951, 952, 936 F.Supp. 1049, 1050 (1996), *aff'd*, 129 F.3d 135 (Fed.Cir.1997).

On its face, defendant's motion appears to raise an issue of whether or not slip op. 98–44 contains a "significant flaw" or is even "manifestly erroneous".[*] Hence, the motion should be, and it hereby is, granted—for careful consideration of defendant's above-quoted proposition that the effect of Proclamation 6821 was to establish that HTSUS subheading 9817.00.96 did not originally cover parts of articles for the handicapped.

**B**

█ The starting point for such consideration is the President's Proclamation itself, which was published at 60 Fed.Reg. 47,663 *et seq.* (Sept. 13, 1995) *sub nom.*

*To Establish a Tariff-Rate Quota on Certain Tobacco, Eliminate Tariffs on Certain Other Tobacco, and for Other Purposes.* It states in part:

6. Presidential Proclamation No. 6763 of December 23, 1994, implemented the Uruguay Round Agreements, including Schedule XX, with respect to the United States and incorporated in the HTS tariff modifications necessary and appropriate to carry out the Uruguay Round Agreements. Certain technical errors, including inadvertent omissions and typographical errors, were made in that proclamation. I have decided that, in order to reflect accurately the intended tariff treatment provided for in the Uruguay Round Agreements, it is necessary to modify certain provisions of the HTS, as set forth in Annex II to this proclamation.

60 Fed.Reg. at 47,664. Paragraph (12) of Section B to that Annex II provides:

The superior text preceding subheading 9817.00.92 which reads "Articles specially designed or adapted for the use or benefit of the blind or other physically or mentally handicapped persons:" is deleted and the text "Articles specially designed or adapted for the use or benefit of the blind or other physically or mentally handicapped persons; parts and accessories (except parts and accessories of braces and artificial limb prosthetics) that are specially designed or adapted for use in the foregoing articles:" is inserted in lieu thereof.

*Id.* at 47,674.

To the extent defendant's motion equates the authority of the President under Article II of the Constitution with the legislative primacy of the Congress per Article I [1], it asserts too much. Indeed, as

---

1. Defendant's supporting memorandum states unequivocally, for example, at page 4 that Proclamation 6821 "expressly amended the language of subheading 9817.00.96" and proceeds to refer to "a change in the language of a statute" and at page 5 to "subsequently enacted legislation includ[ing] language

which did not appear in the earlier act" and "executive . . . change in the language of the statute", noting:

. . . [I]t was the Congress and the President's prerogative alone . . . to decline to extend the privilege of duty-free entry to importers of parts of articles for the handi-

President Taft, writing for a unanimous Supreme Court wearing his subsequent mantle of Chief Justice in the customs case *J.W. Hampton, Jr. & Co. v. United States,* 276 U.S. 394, 410, 48 S.Ct. 348, 72 L.Ed. 624 (1928), reiterated: "Congress could not delegate legislative power to the President". He referred in his opinion to the earlier decision in the customs case *Field v. Clark,* 143 U.S. 649, 692, 12 S.Ct. 495, 36 L.Ed. 294 (1892), wherein the Court had stated

> [t]hat Congress cannot delegate legislative power to the President is a principle universally recognized as vital to the integrity and maintenance of the system of government ordained by the Constitution[,]

and also quoted from *Wilmington & Zanesville R.R. v. Commissioners,* 1 Ohio St. 77, 88 (1852), to wit:

> The true distinction, therefore, is[ ] between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring an authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done; to the latter no valid objection can be made.

*See* 276 U.S. at 407, 410–12, 48 S.Ct. 348. *See also* 3 Antieau & Rich, Modern Constitutional Law 442 (2d ed.1997) ("purely legislative power cannot be delegated by Congress to the President"), citing *Panama Refining Co. v. Ryan,* 293 U.S. 388, 421, 55 S.Ct. 241, 79 L.Ed. 446 (1935).

On the other hand, if, as the defendant maintains, the proclamation at bar is the equivalent of a statute, its counsel are hard pressed to keep this court from reading and accepting at face value the words chosen by the President, *supra;* namely, that 6821 was necessary merely to modify certain technical errors, including inadvertent omissions and typographical errors, made in Presidential Proclamation No. 6763 in implementing the Uruguay Round Agreements and incorporating in the HTSUS tariff modifications necessary and appropriate to carry out those agreements. *Compare generally* Defendant's Memorandum, pp. 6–9, *with id.* at 8:

> ... While at first blush it appears that the "part" clause fell within Proclamation 6821's notation that the modifications were made to correct certain technical errors, inadvertent omissions, and typographical errors in Proclamation 6763, in reality the inclusion of the "parts" language here was not designed to correct a technical error, inadvertent omission, or typographical error. The "technical error/inadvertent omission/typographical error" clause referred solely to errors in Proclamation 6763, and Proclamation 6763 did not discuss 9817.00.96 whatsoever.

Emphasis in original; footnote omitted.

While the language of 6763 supports this last representation, this court knows of no other way to redress an omission than by adding desired words. Those added by paragraph (12) of Section B to Annex II to Proclamation 6821 (and quoted above) are clear; nowhere did the President even attempt to claim that the resultant provision is anything more than correction of a technical error or coverage of an inadvertent omission. Defendant's counsel are thus left to attempt to rely on a canon of construction applicable to acts of Congress, to wit, that a change in the language of a statute is generally construed to reflect a change of legislative intent.[2] Of course,

> canons of construction "are not in any true sense rules of law. So far as they are valid, they are what Mr. Justice

capped. Balancing these types of conflicting interests between importers and domestic manufacturers is Congress' and the President's singular responsibility ....
Defendant's Memorandum, p. 6, n. 2.

2. *See* Defendant's Memorandum, pp. 4–5. *But see, e.g., NCNB Texas Nat'l Bank v. Cowden,* 895 F.2d 1488, 1500 (5th Cir.1990) ("The absence of dispositive legislative history in itself counsels against a conclusion that Congress intended to change the law").

Holmes called them, axioms of experience."

*Caterpillar Inc. v. United States,* 20 CIT 1169, 1177, 941 F.Supp. 1241, 1248 (1996), quoting Justice Felix Frankfurter, Some Reflections on the Reading of Statutes 27 (1947). Nonetheless, the canon which the defendant posits has been applied from time to time by the Court of International Trade[3], although many decisions

> might readily be cited where a change of language in a later enactment different from that used in a former one[ ] was not regarded as showing a change of intent of the part of Congress. *Andrews & Co. v. United States,* 8 Ct.Cust. Appls. 68; *Magee v. United States,* 4 Ct.Cust.Appls. 443; *United States v. Masson,* 3 Ct.Cust.Appls. 168; *United States v. Wertheimer Bros.,* 2 Ct.Cust. Appls. 515.
>
> In the *Andrews & Co.* case, *supra,* this court said:
>
> > ... It is not every change in the terms of a statute ... that results in a change of its general purpose. The rule is one of construction merely in any case, but even as a rule of construction it has its limitations and qualifications.
> >
> > \*    \*    \*    \*    \*    \*
>
> In the enactment of a tariff law, if Congress uses different language from that used by it in previous enactments, while treating the same subject matter, it is the duty of those who are called upon to determine the meaning of its provisions to proceed primarily[ ] upon the theory that the change was not made by accident, but that it was intentional, and that by making such a change in expression Congress used the term in a different sense from that in which the former expression was

used.... This rule is, however, not absolute, and does not compel the conclusion that a change in meaning was meant. It merely *indicates* such intention.... The rule applies where its application is not barred by more convincing considerations, and does not apply where it would lead to incongruity and confusion.

*Stroheim & Romann v. United States,* 13 Ct.Cust.Appls. 489, 492–93 (1926) (emphasis in original). Indeed,

> "changes in statutory language need not *ipso facto* constitute a change in meaning or effect." ... [A] legislative body may amend statutory language "to make what was intended all along even more unmistakably clear."

*NCNB Texas Nat'l Bank v. Cowden,* 895 F.2d 1488, 1500 (5th Cir.1990), quoting *United States v. Montgomery County, Md.,* 761 F.2d 998, 1003 (4th Cir.1985), and citing *Phillips Petroleum Co. v. U.S. Envtl. Protection Agency,* 803 F.2d 545, 557–58 (10th Cir.1986); *Callejas v. McMahon,* 750 F.2d 729, 731 (9th Cir.1984); *Brown v. Marquette Sav. & Loan Ass'n,* 686 F.2d 608, 615 (7th Cir.1982); and *United States v. Tapert,* 625 F.2d 111, 121 (6th Cir.), *cert. denied sub nom. Freedlander v. United States,* 449 U.S. 952, 101 S.Ct. 356, 66 L.Ed.2d 216 (1980).

One "well recognized indication of legislative intent to clarify, rather than change, existing law is doubt or ambiguity surrounding a statute." 2B Sutherland Statutory Construction § 49.11 (5th ed.1992) (internal quotation and footnote omitted). As noted by this court in slip op. 98–44, 22 CIT at —— and 6 F.Supp.2d at 913, n. 4, and now conceded by the defendant, Customs apparently has had such doubt. When the Service first addressed the classification of parts for hearing aids, it con-

---

**3.** *E.g., Schott Optical Glass, Inc. v. United States,* 11 CIT 899, 678 F.Supp. 882 (1987),

*aff'd,* 862 F.2d 866 (Fed.Cir.1988).

cluded (in Headquarters Ruling Letter 807732 (July 25, 1984)) that they were entitled to duty-free entry under TSUS item 960.15[4] as articles specially designed for use by the handicapped. Customs thereafter revisited the issue and reached a contrary conclusion in its Ruling Letter 087559 (Oct. 9, 1990) even though the statutory language remained virtually unchanged. *Compare* Slip Op. 98–44, n. 4, *ibid., with* Defendant's Memorandum, p. 3, n. 1, *supra* ("Customs apparently did not connect the importance of the statutory change discussed in this motion to the pending litigation until the Court issued its opinion").

## II

Be the administrative uncertainty as it has been, this court continues to have the duty "to find the *correct* result[ ] by whatever procedure is best suited to the case at hand." *Jarvis Clark Co. v. United States,* 733 F.2d 873, 878, *reh'g denied,* 739 F.2d 628 (Fed.Cir.1984)(emphasis in original); *Gen. Elec. Co.—Medical Systems Group v. United States,* 24 CIT ——, ——, 86 F.Supp.2d 1291, 1295 (2000), *appeal docketed,* No. 00–1263 (Fed.Cir. March 2, 2000). Here, that procedure, as stated above, raises the issue of whether or not slip op. 98–44 contains a "significant flaw" or is even "manifestly erroneous". In the light of the President's attempt to insure that U.S. tariffs are in compliance with the country's international agreements, and also of the foregoing discussion thereon, this court cannot answer that issue in the affirmative on either count. Indeed, if, as it has opined, "rehearing is a means to correct a miscarriage of justice"[5], the reconsideration afforded herein does not counsel that the judgment in favor of the plaintiff entered pursuant to slip op. 98–44

be set aside, and vacation thereof is therefore hereby denied.

So ordered.

---

4. The parties stipulated that this item was identical to TSUS item 870.67 and HTSUS subheading 9817.00.96. *See* Slip Op. 98–44, 22 CIT at —— and 6 F.Supp.2d at 911, para. 16.

5. *Nat'l Corn Growers Ass'n v. Baker,* 623 F.Supp. 1262, 9 CIT 571, 584 (1985).